Can you call the next case? Now we need to do the same insurance. It's all the same. Thank you, Justice Walker. Can you both come up and state your names for us? Good afternoon. Patty Doole on behalf of Acuity. Good afternoon, Your Honors. Brian Reed on behalf of Cincinnati Insurance Company. All right. As I said to the gentlemen before you, you each have 20 minutes. You do not need to take the whole 20 minutes, but I will ask the appellant if you would like to reserve any of your 20 minutes. Sure. And I will try to remind you so that you can. Whenever you're ready, please keep your voices up. Good afternoon, Your Honors. May it please the Court. My name is Brian Reed from Litchfield Cavo. I am here as counsel for the appellant, Cincinnati Insurance Company. The matter before you today is an insurance dispute between my client, Cincinnati, and the appellee, Acuity Insurance, regarding an underlying construction defect case. Everyone agrees that it's governed under Illinois law. In a nutshell, Cincinnati seeks reversal of the Circuit Court of Cook County's ruling, finding that Acuity did not owe a duty to defend their common insured, Dankin Roach, and that as a result, therefore, Cincinnati also has no right to seek equitable contribution and reimbursement of a portion of the defense costs that it paid to defend Dankin Roach in the underlying litigation. The background facts of the underlying case aren't anything different than you've probably seen before. Condemning building built, it leaks, the Condemning Association sues, the general contractor, the party with whom it has a contractual relationship, that party turns and files third-party complaints naming the various underlying trade contractors, including Cincinnati and Acuity's insured Dankin Roach, which was the carpentry subcontractor. I have a question and I want to ask you to keep your voice up just a little louder. So you clearly thought there was coverage. Acuity says no coverage. You know, this is a kind of general question, but why is there? Are there split in the law in your view? Is there, I mean, two insurance companies, same insured? Correct. I'll get right to the point, Your Honor. Cincinnati believes that this case is governed by the First District's ruling in the J.P. Larson case, Milwaukee Mutual v. J.P. Larson. And we believe that, Cincinnati believes that its position is consistent with that case and the distinction between that case and most of the other cases that are cited in the party's briefs. The distinction being we look at who it is. Because it's a sub. Exactly. Exactly. And the scope of the sub's work, you would get the carpentry contractor who's alleged to have damaged things other than just what it did under its contract. Okay. So let me get right to what I think is the hardest question. Or maybe not the hardest question. So let's say we say yes, there's coverage for the sub. What about if the general isn't an additional insured on the same policy? Is it a different analysis or is it the same analysis? It is a different analysis, Your Honor. And the reason for that is in keeping with the Illinois law principles that breach of contract, for example, isn't a covered loss under insurance. The CGL policies that both companies here issued aren't intended, for example, as equivalents of construction bonds. Right. The GC has overall responsibility for the construction of the whole project, including supervision, what have you, or pursuant to its contract. If it violates those things, then it's a breach of contract. And Illinois law says, well, that's economic loss. That's also not something that's intended to be covered by a GL policy. You can get a construction bond or something for that. So there's a difference in the parties' roles, and that is because of when you focus on the subcontractor, if it's work damaged to something, if the only thing that ends in the complaint was damage solely to Duncan Roach's work, then the same analysis. Right. It has to be to something else. And so we believe that the Larson case recognized that and that it's factually distinct from the list of other cases that are cited in the parties' briefs. And when the court looks at those, you'll see that the rulings against coverage in those cases, the parties were either developers, construction managers, owners, or someone where the entirety of the project was within their scope and control. A second reason in most of those cases as well are the causes of action that are asserted. Oftentimes they're fraud, breach of contract, breach of warranty. Again, issues that if that was the only thing asserted against Duncan Roach, we'd have the same opinion that ACUITY had. But here the case involved, it did involve breach of contract, breach of warranty, but also construction negligence and contribution as one of the claims from the general contractor down to Duncan Roach. Are you relying at all on what seem to be somewhat vague allegations of property damage to the property owners, to the condo, to the individual property owners within the condo? That's noted in one of the underlying complaints. It wasn't in all of the complaints. It's somewhat important in terms of determining the time in which a duty to defend would have excepted. But I don't think it's necessary to the analysis. I think the allegations here that we're relying upon is that Duncan Roach's work allowed water infiltration, which caused problems with the building envelope and the common elements in the building. I know that the personal property issue comes up a little bit oddly to our way of thinking in the ACUITY v. Glennie Zarek case from the Northern District, where the court there, and again it's Northern District, I'm not binding on this court, but the court there found that there would be no duty to defend because in fact the association couldn't have standing to assert that. But I understand that argument. I don't know necessarily that we would have argued the same way because I think you have a duty to defend against false, fraudulent, groundless allegations. And so that's more of a defense. Exactly, than necessarily a coverage issue. But nevertheless, that's in that case. It's out there. We don't think that that case governs. And it's contrary in some ways to the J.P. Larson case, which again we think is the only case amongst the cases cited by the parties that is directly on point to the situation here. ...work by the subcontractor allegedly damaging work by other parties. And a contribution claim as opposed to solely a fraud claim or a contract claim or some other claim not covered for another reason, like a policy exclusion or something. But one of their arguments, one of ACUITY's arguments is that the two policies covered different risks. That the period of time was, there was a consecutive period of time and that therefore they didn't have a duty to defend. That was your argument. That goes more into, and they did argue that, that's more along the lines of the contribution claim. If you recall actually, the way this case set up, ACUITY filed the D.J. itself because it recognized that there would be an argument that it owed coverage under its policies. So it initiated the underlying D.J. in which Cincinnati later intervened. So take away from that the fact that ACUITY recognizes the potential for coverage for which it needed to get a declaration that it wasn't. The equitable contribution argument, which is where ACUITY says they're not the same risks, we believe that that's a misread of contribution law in Illinois and based on a misinterpretation of what the term concurrent means. Concurrent in Cincinnati's interpretation, and we believe it's upheld by the case law, is you both owe an obligation to defend. You've got the same underlying complaint, both of you insure the same party, it's CGL coverage, same terms. We happen to have here the underlying complaint which alleges water infiltration over a significant period of time, which spanned the Cincinnati policies allegedly or potentially incepting in 2000 all the way up to the end of its policies in 2007 and continuing thereafter until the ACUITY policies starting in 07 and going to 2014. And again, we're dealing with the duty to defend, which is what are the allegations of the complaint? Does it put potentially that issue, the coverage under all those policy periods? We believe it did. And the case said there was never any finding upon there was damage in this period and not that period and the other period. Am I right that the trial court never reached this issue because they found no duty to defend for ACUITY in the summary judgment ruling that's before us? Correct. Exactly. The court found that ACUITY had no obligation because the underlying complaint didn't allege property damage, didn't allege occurrence. Going back for just a second to my first question, I guess it concerns me, concerns us as a sort of reviewing court that two very sophisticated insurance companies with very good lawyers can look at the same set of facts and say, duty to defend, no duty to defend. So what's the rule? What's the clear rule that you would like us to come up with that says, here's how you know whether you have a duty to defend a subcontractor? And I think it breaks down, Your Honor, and there is, I think there is a distinction. It breaks down to who is the insured and what is that insurer's role? What was that insurer's work? If it's an insured that has the overall responsibility for everything that's at issue in the complaint, then perhaps no coverage for that insured. If it is an insured, in this instance, a carpenter subcontractor whose work is alleged to have damaged other things, then Other people's work. We don't think that Illinois law stands for the principle that there is absolutely no coverage for property damage on any construction site. Can you align Westfield v. Western Bureau with your, do you think it fits in? Oh, absolutely. I think the, first the defendant, the insured in Westfield Bureau was a developer. And again, its work is the entirety of the project. And also, there was the claims. If you look at the claims against the insured in that case, breach of warranty, violation of Consumer Fraud and Deceptive Business Practices Act, common law fraud, and breach of the implied warranty of habitability. So again, no coverage there. Also, in keeping with the fact that general liability policies aren't construction bonds and that the insured in that instance was being held responsible for what he had contractually agreed to do and not for something or damage to something otherwise. Are you aware that the Northern District of Illinois actually cited that case and they actually cited the dissent in finding that there should be a duty? Are you aware of that? In which case, Your Honor? That was in Frank and Martha Mutual Insurance versus Hopscull Construction Incorporated. I wasn't. And it was decided June 8, 2016. And they actually cited the dissent. I don't know if you're familiar with the fact that Justice Patisky actually dissented in the Westfield Bureau case. No, I wasn't aware of that. I don't know that she cited her dissent in finding that there should be a duty to defend. And I do think, and obviously acuity has a different spin on the case, I don't think they're inconsistent. I think J.P. Larson is the case that's on point from the First District in 2011. And based on those distinctions, I think it's still good law today. Obviously, the Circuit Court of Cook County felt otherwise. But based on the rule and based on the principles that I think underlie Illinois law's finding of no coverage for construction defect, for breach of contract, and things of that nature, either being because the damages are economic loss and not necessarily property damage, or because there's not an occurrence because a breach of contract isn't an occurrence. I think in this instance, those factors are met. And I think the court in J.P. Larson also reviewed and remarked upon the other cases. I could do a quick rundown. I won't. But if you just look at the dates on which most of the cases cited by acuity in this brief were decided, almost all of them other than the Van Buren case were decided prior to Larson, and Larson reviewed them and at least noted them in its decision. So that's the first point. The first point is we think when the duty to defend is broadly construed and you base it on the allegations of the complaint, in this case it should have been found that acuity owed a duty to defend and should have defended Dinkin Roach as Cincinnati did. The second point on appeal, and again, the court's ruling in the underlying case is a one-pager, so it's not very explicit in terms of her decision on equitable contribution, but we don't think that Cincinnati is barred from equitable contribution. We think that it is concurrent coverage, which means that both insurance companies had a duty to defend the same insurer against the same claim. Concurrent, in your view, does not mean the same time. Not the same policy periods, exactly. Right. And I think that's... So you're saying that it's yet to be determined when the damages or injuries were caused? Correct, Your Honor. And, in fact, it never will be. The underlying case settled before it went to trial in terms of actual determination of who had liability and when the actual damages occurred, so we're stuck with, but since it's a duty to defend analysis based on the complaint, that's what we've got and there's nothing further to, I would say, to winnow policies off of either end. I think we go with what the complaints say and... That wasn't established in the settlement agreement? No, I don't believe so, Your Honor. Okay. No additions. So what you're asking for is a remand back to the trial court for determination of what contribution they would owe you? Exactly, Your Honor. Would that simply be a 50-50? How would that be calculated? It might not surprise you to know that's been suggested. I think we would present evidence to the court and we could say, and get an affirmative ruling, here's the complaint. It appears to put these years at issue. Of those years, Cincinnati had this much coverage. Of those years, Acuity had that much coverage. Split it, whatever it is, 50-50, or if I have six and she has four, or if she has seven and I have three, 70-30, 60-40, however it is, because we don't have definitive findings on... Is that just the cost of defense, or is that also the cost, including settlement costs? Indemnity is not on the table. That was paid and is separate. This case is solely about reimbursement of defense costs. Reimbursement of what? Defense costs. Cincinnati alone defended Duncan Roach, and through and including through the settlement and termination of the case. So, at least in your mind, you're comfortable with the notion that some factual determination can be made to result in a reward to whomever for whatever amount? I think that's right, Your Honor. Based on, we might have different opinions on what years are at issue, but we can each brief that to the court and say we think it's 14 years. The community might have a different number of years, but we can present that and the judge can affirmatively decide, yes, the policies between 2002 and 2013 or what have you, based on the allegations in the complaint. And, again, that's because there weren't summary judgment rulings in the underlying case. It actually settled, and this may or may not, I don't want to call this in the record, but it settled because the underlying defense won a social limitations argument. And that was going to be appealed and then suddenly it settled. Strange, I'll admit. Yes. But because it was a social limitation, so it wasn't an affirmative finding on damages at any particular time. If no other questions, I'll reserve the rest for you. Okay. Thank you. Thank you. Again, good afternoon. Carrie Durer, Board of Acuity. Am I on yet? Because I'm usually on. I think you're going to be surprised to hear that not only do Acuity and Cincinnati disagree on the duty to defend at issue, we also disagree on the interpretation of the Larson case as well as, quite frankly, Illinois law completely on this issue. And that's a problem, isn't it? Isn't that a problem? No, it's not a problem. I mean, maybe not for the lawyers, but for your clients, that two companies look at this and say, well, to me that feels like a problem. Well, you know, it's probably a query for another day, but while another insurance company is sitting here arguing that they owe a duty to defend, under case law, which I find provides they do not owe a duty to defend, is mind-boggling. Okay. And even when we run in the trial court and Judge Democopoulos says, you know, go ahead and appeal, I was like, why would they appeal? So, I don't know, maybe we ought to continue. Isn't there a continued event with the reservation of rights? You have options. You have an option of defending under a reservation of rights. You have the option of filing a declaratory judgment action. Which is what you did. The fact that we filed a declaratory judgment action doesn't mean that we breached our duty to defend or that we were afraid there was an obligation. It's something that insurance companies do every day. That's all I do. It doesn't mean that I thought there was a duty to defend. And we're not taking it. Okay. We're not taking it as an admission on your part that there is coverage. But I do think that there is a need for clarity here because I don't think they're just chumps. I refuse to give money away. They're not in the business of giving money away. I will give you clarity. Okay. So, number one, there is not a single Illinois decision which finds that a construction defect case against a general contractor is not the result of an occurrence solely because it's work. The building as a whole is damaged. In the same vein, there is not a single decision which finds that because a subcontractor is involved and there may be damage to other portions of the building, that that somehow creates an occurrence. I think Larson can certainly be read to exactly say that. No, I believe, and as every single decision which has cited to Larson, Larson is simply a case where they found that there was alleged damage to other property, which was the unit owner's personal property. And in the two decisions from the first district which have cited to Larson, that's exactly the proposition that they cited it to. They did not cite to some subcontractor exception a damage to other property. Because, quite frankly, when you look at all of these occurrence cases in the world of construction defect, the determination is based on whether or not there is an accident. And the issue of whether or not there is an accident is based on the question of foreseeability. So in every instance, what the court is doing is looking to the damage. Now, the question is whether or not this damage is the natural and ordinary consequence of the shoddy workmanship or the improper construction methods or whatever. And if it is, then the court's finding that it's not an occurrence. You build a roof improperly, you don't lay the tiles correctly, what do you think's going to happen? The natural and ordinary consequence of that is that rain's going to come in. You don't properly caulk. You don't properly put the windows in. Okay, let's stay with that. So, you don't properly caulk or you can stay with your roof. Weeks in and the property, the condo owner's Persian rugs get, which are worth millions of dollars, get damaged. There's plenty of law that says there's property. I agree with you. Okay. That's because it's to something other than the building. Okay. If I'm the roofer, I build the roof. Water gets in. All I'm responsible for is the roof. Water gets in and damages this very expensive mahogany that some other subcontractor put in to build the floors. That's not. What's the difference? The difference is if you're going to have leaks from the roof, what do you expect the consequence of that? What's the same going to damage? No, you have to do it separate. You have to do it separate. You have two questions here. So, if it's to a portion of the building, if something's going to leak, a pipe's going to break, or you fail the caulk and water comes in, water comes in, it damages the building. That's foreseeable. That's the natural and ordinary consequence of it. What difference does it make if the person who installed the window is a subcontractor? Does all of a sudden that make the question of the damage to the wall different? Does the perspective? No. Again, this assessment is solely based on the question of foreseeability. Now, there has to be, to some extent, I mean, foreseeability kind of says too much. Because if there's a leak, there's, you know, some damage to something is always foreseeable. What's not foreseeable is what's going to get damaged. And so the Persian rug is no more foreseeable or less foreseeable than the mahogany floor. Yes, it is. Because there is something separate and distinct from the building that's the natural and ordinary consequence. When the water comes in, it's going to hit the walls. It's going to hit the floors or whatever that's part of it. Now, when it goes beyond that and you're dealing with a building that's inhabited and there's property of a third party, that is not the natural and ordinary consequence of, you know, the insurance. You're taking it out of the scope of poor workmanship and you're bringing it into the realm of an accident which gives rise to damage to another, which is what a liability policy is supposed to apply to. Correct. But I don't see how looking at who the insured is changes the foreseeability or the natural and ordinary consequence of the damage when you're talking about water infiltration. And I respect the reason that there's not a court that has come and said that that's different. State court. We do have decisions in the federal courts, but for everyone that says... It's true in Illinois law, in their view. But you know what, I can find you a case that says subcontractors' work is not different and a case that says it is. And I agree with you. See, I agree with you that there are lines of cases that support each of you and that seems problematic to me. I don't see any cases in Illinois that support the other proposition. There are some federal district court cases. The only time I like to cite to a federal case is when... A state court has said, you know what, this makes sense. In one of those cases, when they've relied on the federal court decision, one of those cases is the Viking case, who cited to the American Fire vs. Brewery. I'm probably saying that wrong. It's a Maryland district case. It's cited in the briefs. What happened in that case was you had the insured installed in each system, including the exterior insulation and all that. I know I have them right in front of me. The purpose of which was to stop the infiltration of water. Guess what? Didn't work. Water infiltrated into the building. There was damage to the ceiling tiles and the drywall, which that insured did not install. They came and they argued, there's an occurrence here, because I didn't put in that ceiling tile and I didn't do that drywall. The court said, what you need to look at, again, is whether or not we're dealing with foreseeable damage. Not an accident. We're dealing with something that's the natural and ordinary consequence here. The court said, and I like the quote because I think it brings it all back around to, this is really a matter of common sense. And it's cited on page 15 in my response brief. And the court said, this court notes that it is inconceivable that the parties would not have foreseen damage from the water leaking into the building as a possible result of the failure of the system to prevent such leaking. So, you know, the whole assessment here is whether or not we're dealing with an accident. I don't believe the identity of the work next to the faulty workmanship addresses that question. It's dependent upon the foreseeable results of an accident. So what I'm saying is that if the subcontractor doesn't call and subsequently there is a leak and that leak causes damage to property that belongs to a third party such as an individual unit owner's property, that would be an occurrence. Correct. But if that same damage does no damage to a unit owner's property but causes damage to the business center, to the workout room, and all the bikes and the treadmills are all permanently damaged, that would not be an occurrence. No, no, no, no, no, no. What I look at is there has to be damage to something. Stop for a second, please. So what you're telling me is that that would be an occurrence where the treadmills are all damaged? It could be. The computers are damaged. That would be an occurrence. So when there's damage to the common areas, there could be an occurrence. Well, what does damage to the common area mean? Well, I just told you. Does it mean it's lost? I just told you what it means. Don't make things up. Okay. I just told you exactly what it means. It means the common area is the workout room. Okay. The business center is a common area. Okay. All the computers are damaged. All of the equipment within the workout room is damaged. Yes. I agree that's an occurrence. So the question is, that would be an occurrence. That would be an occurrence. So if that's not damage to the building, the distinction that the case law draws is that it has to be damage to something other than the building. So if there's damage to the common areas, the foyer is a part of the common areas. So if all the carpet in the foyer is damaged and the desk and the chairs with the security guards that are all damaged, that would be an occurrence. Yes. So this becomes really sort of fact-based here. Correct. In this case, whether or not the damage to the common areas amounts to property outside of the building itself. No. Again, the common area is part of the building. Items within the common area are separate and distinct property. There's no allegations that any of the possessions of the association were damaged. So just to be clear. What I'm saying. No, those are possessions of the association. The floor in the common area, the carpet in the common area, in the foyer, in the lobby area, it's all damaged. If you look to the cases that have looked at those items, we have cases where they've gone through and said, you know, the carpeting or the flooring, and if it's part of the building, the general contractor, the subcontractor, whoever may have put in that, it's got to be property separate and distinct, like personal property. The walls, the floors, and again, there's no allegations of that here in any event. They're just saying that there's leakage in the building as a whole, including the common areas. That doesn't take it outside the realm of dealing with damage to the building, which again, under Illinois law, is foreseeable. And the only question is whether or not that issue of foreseeability changes because it's allegedly caused by a subcontractor. And I respectfully submit that if we have a weakening roof or we have the failure to caulk allowing water infiltration, it's foreseeable whether the general contractor did it or the subcontractor did it. That doesn't change the analysis. Illinois law is very clear, putting aside the whole issue of whether or not the unit owners have a right under these kind of pleadings to recoup those damages, that when you have damage to separate and distinct personal property, that that can be called damage caused by an occurrence. And that's the marker case, the first case. Isn't there some distinction in foreseeability in the sense that the general knows what the floors are made of? The general knows what the whole construction project is. The subcontractor has no idea if you're putting in mahogany floors or hickory floors or... What difference does that make? Because you're talking about foreseeability. That's why. No, it's not that I'm going to damage the mahogany as opposed to apply wood floor. It's the floor. It's the floor. You can't preferentiate. I mean, that... Well... Well, you can't. You know that it leaks. I do think because you say the reason why is it not foreseeable that if there's going to be leak, it's going to ruin the Pershing Road, because you have no idea if the unit owner has a Pershing Road. Correct. You don't know what they have. That's why it's not foreseeable. Construction defect things are the construction of buildings. It's not where you've got what's going on in this part and unit owners and things like that. These are construction defects in the property as a whole that they're saying this is shy workmanship and the like. It's not like the marker case where it was for an individual homeowner, and then, you know, they had their possessions and the like in there. So these cases, and particularly now, after, you know, the most recent case and the whole unit owners, these cases are solely brought by the associations, but damage to the buildings. Let me just clarify one thing. Sure. Am I right? This started as a deck action by you. Correct. But all that's left in the whole deck action is their claim for contribution. Correct. Okay. We mitigated this from whatever it was, the 13. I don't have a copy of my deck. But we originally filed it. We had Duncan Roach, who was the carpenter. Judy also had another insured masonry systems. They were joined in on it. And then every single subcontractor's carriers filed deck actions, and they were all consolidated. We had probably 30 to 40 parties. And then when the underlying case went away because of the statute of limitations, everybody else went away except for Cincinnati. Okay. And what about Belgravia as an additional insured? They claimed additional insured coverage under both of our policies, and then they went away. We had actually filed a motion for summary judgment on that as well, and that was never ruled upon because everything went away. And before you sit down and then whatever you want to say, but is there a question, and I guess if there is it goes back to the trial court if we reverse, that damage occurred into your policy, into the period that you have coverage for, or is that a question that you've raised below? That question is irrelevant in terms of, I think, the duty to defend. Right. So these are the allegations that have been placed. What it is is they talk about the date of the contract, which I believe was 2002, or maybe the work was completed in 2002, and then they generally just plead damage. So there's no time period. Right. And, again, if Your Honors want me to address it, I'll do it very briefly. The timing of the damage and the policy periods is only relevant to this whole equitable contribution claim. And it's our position that when you look to the Illinois Supreme Court's decision in Home v. Cincinnati, that case talks about when do you have an action for equitable contribution. And very specifically held in the case law has followed it that you have to have concurrent insurance, which covers the same risk, identity of the insured, and risk of identity of the insured. I don't remember what those are. You do. So we're only concerned about the risk. And the reason the policy periods are relevant is because what we're dealing with here are occurrence policies. They cover damage which occurs during the policy period. Okay? Both of our policies say we only cover property damage which occurs during the policy period. They're on the risk for seven years before we are. We're never on it at the same time. So it's our position we don't cover the same risk. And, you know, it's not a matter of let's wonder what the word concurrent means. We clearly don't cover the same thing. Now, counsel referenced, you know, that that deals with a duty to defend. But if you look to the Home v. Cincinnati decision, they said no, this is not a question of whether or not more than one carrier's policy is triggered, which is a duty to defend concept. This is whether or not they both cover the same loss. And in the Home case, you have two additional insured endorsements, one covering the insured for their liability arising out of X and the other one for arising out of Y. And the Supreme Court said that's not the same risk. They've argued that this gets rid of the whole world of pro rata allocation. Well, in this case, you were covering the same risk, just at a different period of time. Well, we are covering property damage that occurred after 2007. I didn't cover any property damage. That's what I just said. Right? But that's not the risk they covered. They wouldn't cover that. You're not listening to me. I said you're covering the same risk, but at a different period of time. Well, it's both property damage. But I didn't cover the risk. You're not covering property damage at a different period of time. But it's different property damage if it's at a different period of time. Look to the Home v. Cincinnati case. Because what they argued there was, hey, you both owe the duty to defend. And the court said, though it was possible that both policies would one day be triggered because Allied's liability for an accident arose out of both Western's and Allred's work, this is a different question than whether the policy set out to cover the same risk. And the court repeated itself two rounds down. But again, just because both policies may have been triggered to provide coverage does not mean that the policy set out to cover the same risk. And they found that those two policies didn't cover the same risk. And I submit that we're not covering the same risk because I don't cover property damage during his policy period, and he doesn't cover it during mine. But still could trigger the duty to defend. No, that's what this says. The fact that they're both triggered is immaterial. But again, I don't think I'm ever triggered. But even if we are both triggered, that doesn't mean we're covering the same risk. And again, that's from the LMS primary opinion. We're about out of time, unless there's any other points you need to make. Thank you. Are you in? All right. Counsel. Thank you, Your Honor. I'll be brief, and I'll just limit myself really to responding to the few things that the counsel raised. First, the counsel says that there is no first district case citing to a subcontractor exception. And the reason for that is because the other cases didn't deal with the subcontractor issue. I think I addressed that as we went through. They were GCs, construction managers, or developers. The subcontractor exception, if you want to call it that, is J.P. Larson. That is the case that is a subcontractor's work damaging some other subcontractor's work. Duty to defend owed. We talked about it earlier on. I had an inquiry regarding what does damage to common elements mean. It's true. It alleges damage to the common elements in the underlying complaints and doesn't go into great detail on that. I think it's fairly well established that the duty to defend, and I'm the insurer, so it's held against me, but it's been sued very broadly. So I can't say that, or Sincerely does not say, that the allegation of damage to the common elements is so narrow as to be not potentially creating coverage. Again, the argument about the fact that it has to be damage to something other than the building, again, I think that's a misstatement of Illinois law, and it arises from cases in which the particular party for whom insurance is being examined, their responsibility is the whole building. And, again, so that dovetails into, again, which we think is the sole dispositive case directly on point, which is J.P. Larson in 2011, which, again, was rendered by the first district years after most of the other cases that are cited by ACUITY. And, finally, unless your honors have questions, with respect to the equitable contribution issue, if you look at Home v. Cincinnati, the ruling there on equitable contribution was really driven by the fact that it was determined that one policy was excess and the other primary. And that's the reason why they didn't have a concurrent obligation to defend, because, as we all know, the primary goes first, primary defends. If you're excess, you don't owe anything until and unless the primary is exhausted. And that's what Home v. Cincinnati says. And within that same case, it does say that equitable contribution is available where different policies ensure the same entities, same interests, and same risks. And for purposes of a duty to defend analysis, where there isn't a determination or allegations in the complaint to say damage occurred here but not here and here but not here, where it is a broad allegation of damage over time, we ensure the same, ensured our policies are implicated to an extent to be determined, which policies are implicated during that period of time, and provide general liability coverage, which, again, we say under the Larson case, at least for purposes of the duty to defend, it was alleged that there was property damage by an occurrence. And so that is a concurrent obligation to defend owed by Cincinnati and owed by ACQUITY barring the determination of facts that lets someone off the hook for some other reason. If it was indemnity, then there might be something different. If I would not be, or Cincinnati would not be entitled to contribution from ACQUITY for damage that occurred in 2003, and solely 2003, that is a finite thing, and that isn't what we're at. We're at the duty to defend on an undetermined allegation of damages. That's all I have. Thank you. Any questions? Thank you both. We will take this matter under advisory.